FILED

99 SEP 21 AM 9: 42

U.S. DISTRICT COURT
N.D. OF ALABAMA

**United States District Court
Northern District of Alabama
Northeastern Division**

**Clifford Brisentine,**       ]
                               ]
   Plaintiff(s),    ]
                               ]
vs.                            ] CV-95-N-1623-NE
                               ]
**Stone & Webster Engineering Corp.,** ]
                               ]
   Defendants(s).   ]

ENTERED

SEP 21 1999

**Memorandum of Opinion**

The court has for consideration the renewed motion for summary judgment filed by defendant Stone & Webster Engineering Corporation on July 23, 1999. The motion has been fully briefed and is ripe for decision. Upon due consideration and in light of intervening binding precedent from the United States Supreme Court, the motion will be granted in all respects.

The court previously denied the defendant's motion for summary judgment finding, "the fact that the [Office of Federal Contract Compliance Programs] found Brisentine to be an individual with a disability under the ADA is sufficient evidence . . . upon which a reasonable jury might find that he meets the ADA definition of an individual with a disability." The court also found sufficient evidence "upon which a reasonable jury could find that S&W perceived Brisentine as disabled under the ADA." The recent decisions of the Supreme Court in *Sutton v. United Air Lines*, _____ U. S. _____, 119 S. Ct. 2139) (1999) and *Murphy v. United Parcel Service, Inc.*, _____ U.S. _____, 119 S. Ct. 2133 (1999) dictate different results on each of the two findings.



The court held first, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limi[t]' a major life activity." *Sutton*, 119 S. Ct. at 2146-47. The determination "whether a person has a disability under the ADA is an individualized inquiry." *Id. at 2147. Citing, Bragdon v. Abbott*, 524 U.S. 624, 641-42, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998) (declining to consider whether HIV infection is a per se disability under the ADA).

It is clear from the plaintiff's own testimony that his back condition does not substantially limit any of his major life functions. The evidence is that Mr. Brisentine suffered an L4-5 herniated disc injury to his back when he fell from a scaffold on October 2, 1992. He underwent surgery by a physician in Las Vegas, Nevada, on February 25, 1993, and was subsequently referred to physical therapy. He then participated in a "work hardening" program. Upon his release from the work hardening program, Brisentine was told he could immediately return to work but was not to lift more than 58 pounds. In September 1993, Dr. Richard Rosenburg gave him a lifting restriction of 30 to 45 pounds and advised him that he should not engage in repetitive bending and stooping.

In March 1994, the plaintiff settled a worker's compensation suit against his former employer. That spring he worked as an industrial electrician for a period of 6 to 10 weeks at the Farley Nuclear Plant in Dothan, Alabama. From the time he settled his claim to the date of his deposition, he never saw another doctor in connection with his back injury.

> Q. What do you mean by "I was doing better"?
>
> A. I wasn't having a problem with my back at that time. The only time I was allowed to see a doctor was when I had a problem, but at that time I wasn't having a problem after that.
>
> Q. Have you had any medical treatment for your back–
>
> A. That's the last time.

Brisentine Depo., p. 48.

In fact, Mr. Brisentine swears that he can work, and that he has in fact worked without significant interruption in his chosen field as an industrial electrician and without accommodation since February 1994. He also testified:

> Q. Let me clarify my question: Have you seen any doctor for your back problem after you got that $35,459.85?
>
> A. These are the only one's I have seen, so, no, I have not.
>
> Q. Have you worked as an industrial electrician without difficulties since February of 1994?
>
> A. Yes.
>
> Q. Have you had any back-related problems in connection with your work since February of 1994?
>
> A. Well, I still have to watch what I do, but as far as missing work because of it, no, I have not missed any work.
>
> Q. What do you mean that you have to watch what you do?
>
> A. I have to make sure that I don't bend in the wrong direction. When you go through the work-hardening program, that's what they teach you, how to bend and stoop in the correct manner.
>
> Q. Is that called good body mechanics?
>
> A. Correct.

Brisentine depo., pp. 182-183. It is clear from the plaintiff's deposition testimony that he is neither generally limited in his ability to work nor is he precluded from working as an industrial electrician.

> Q. Do you know whether your restrictions against heavy lifting forecloses (sic) you from a substantial number of electricians' jobs?
>
> A. No. Do I know it today or does it not?
>
> Q. Do you know whether it forecloses you from a substantial number of jobs?
>
> A. It doesn't foreclose me from very many jobs, no, because most heavy jobs, as I said, don't last that long. You only lift for a short period of time, it's not something, you don't do it every single day all day long, that's not what you do. There are very few jobs like that, at least any jobs that I have done. That's my own personal experience, I would say.

Brisentine depo., p. 112.

The plaintiff asserts that he is substantially impaired in the major life activity of working.[1] "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."*Sutton*, at 2151.

The evidence establishes without doubt that Mr. Brisentine cannot meet this standard. Even with his back condition he can and does continue to work regularly as an

---

[1] In *Sutton*, the Supreme Court assumed for purposes of that case, but did not hold, that "working" is a major life activity covered by the ADA. *Sutton*, at 2151. The court noted certain "conceptual difficult[ies]" associated with defining "major life activities" to include working.

4

industrial electrician. Thus, his major life activity of working is not impaired by his condition and he does not suffer from a disability as defined in the ADA.[2]

Finally, the plaintiff argues that he is disabled for ADA purposes because the defendant "regarded" him as disabled. Mr. Brisentine can avoid summary judgment on this aspect of his action only if he has evidence that the defendant "mistakenly believes that [he] has a physical impairment that substantially limits one or more major life activities, or (2) [it] mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, at 2149-50.

In *Sutton*, the plaintiffs argued that (even if their myopia was not sufficiently serious in itself to constitute a disability) the employer f"regarded" them as disabled because they were excluded from the job they sought. The Court rejected that argument:

> Assuming without deciding that working is a major life activity and that the EEOC regulations interpreting the term "substantially limits" are reasonable, petitioners have failed to allege adequately that their poor eyesight is

---

[2] As noted above, the court previously declined to grant the defendant's motion for summary judgment on the basis that the OFCCP had found the plaintiff disabled. After *Sutton*, that ruling cannot stand. First, the OFCCP finding was made before *Sutton* by applying agency regulations that broaden the definition of disability beyond that approved by the Supreme Court in *Sutton*. Second, Justice O'Connor made it clear that the proper definition of disability is a statutory one and that no agency has been given the authority to redefine it more broadly than the statutory definition. In short, the OFCCP finding was based upon an invalid definition of what constituted a disability and, for that reason, can have no probative value in this case.

The defendant has moved to strike the affidavit of Patsy V. Bramlett, an expert hired by the plaintiff. By comparing Mr. Brisentine's stated physical limitations to categorical descriptions of jobs from the Dictionary of Occupation Titles, Ms. Bramlett has concluded that the plaintiff's back injury and its associated limitations have significantly reduced the number of jobs available to him. As noted above, the appropriate inquiry in an ADA case requires the court to make an individualized assessment of the plaintiff's claimed impairment and its impact on his ability to perform a wide range of jobs. Moreover, the testimony of any expert witness is admissible only if it demosntrates a valid connection to the pertinent inquiry in the case at hand. *Kumho Tire Company Ltd. v. Carmichael*, _____ U.S. _____, 119 S. Ct. 1167, 1175 (1999)(The trial court's *Daubert* mandated gatekeeping function must be "tied to the facts" of the paraticular case.) Ms. Bramlett did not make the individualized assessment required by *Sutton*. Instead, she simply assumed that every person with the same or similar lifting and bending restrictions as Mr. Brisentine are disabled under the ADA. This is not the inquiry required by *Sutton*. Because Ms. Bramlett's opinion is not "tied to the facts" of this case, particularly with regard to the plaintiff's actual ability to engage in his chosen work as an industrial electrician, her evidence must be stricken.

> regarded as an impairment that substantially limits them in the major life activity of working. They allege only that respondent regards their poor vision as precluding them from holding positions as a global airline pilot. . . . Because the position of global airline pilot is a single job, this allegation does not support the claim that respondent regards petitioners as having a *substantially limiting* impairment (emphasis in original).

*Sutton*, at 2151.

In *Murphy*, Justice O'Connor further explained the rationale underlying the holding that the plaintiff must demonstrate that he is regarded as being unable to perform a class or broad range of jobs when the major life activity is claimed to be that of working.

> Consequently, in light of petitioner's skills and the array of jobs available to petitioner utilizing those skills, petitioner has failed to show that he is regarded as unable to perform a class of jobs. Rather, the undisputed record evidence demonstrates that petitioner is, at most, regarded as unable to perform only a particular job. This is insufficient, as a matter of law, to prove that petitioner is regarded as substantially limited in the major life activity of working.

As was the case in *Murphy*, the plaintiff here directs his claims toward the defendant's perception of his ability to perform a single job. He has presented no evidence at all that the defendant regarded him as unable to perform any job other than the single job for which it was hiring, and for which he had been referred, on May 9, 1994, that of conduit electrician.

On the day Mr. Brisentine reported for work, he indicated that he was unable to perform that job because of its requirement for heavy lifting and repetitive bending and stooping. He indicated that his restriction could not be removed. Moreover, he admits he was told by the defendant, "We do not have any light duty jobs, if we did we would keep you." Brisentine depo, pg. 86.

Thus, the evidence is that Stone & Webster "regarded" the plaintiff as being unable to perform the duties of a single job. As was the case with the Sutton sisters and with Mr. Murphy, this is insufficient as a matter of law.

The defendant's motion for summary judgment will, in all respects, be granted and the action will be dismissed with prejudice.

Done, this 20th of September, 1999.

EDWIN NELSON
UNITED STATES DISTRICT JUDGE

7